No. 20853.

BIG TOP, INCORPORATED *v.* CHESTER L. HOSKINSON, ET AL.
(407 P.2d 26)

Decided November 1, 1965.

PHELPS, HALL & SMEDLEY, for plaintiff in error.

ROBERT K. WILLISON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE McWILLIAMS.

BIG TOP filed with the Board of County Commissioners for Jefferson County an application for a 3.2% beer

license for its premises located at 6350 Morrison Road, these premises being situate in the County of Jefferson. In due time a hearing was held in connection with Big Top's application, and at the conclusion thereof the County Commissioners denied the application.

Thereafter, pursuant to C.R.S. '53, 75-1-7, Big Top sought and obtained judicial review of the aforementioned action of the County Commissioners, Big Top contending that in denying its application the Board acted arbitrarily, capriciously and without good cause and that in thus acting "contrary to the evidence" the Board had abused its discretion. Upon hearing, however, the trial court found that the Board of County Commissioners had *not* acted arbitrarily, capriciously, or illegally and without cause, and accordingly entered a judgment dismissing Big Top's complaint. It is this judgment which Big Top now seeks to have reversed.

At the hearing before the Board of County Commissioners it was apparently agreed by all concerned that the affected "neighborhood," as that term is used in C.R.S. '53, 75-1-5(3), extended one-half mile in all directions from the site of Big Top's store. The southern half of this area had been developed for residential purposes, whereas the northern half was still in the main undeveloped farm land. Various petitions were presented to the County Commissioners which indicated that some 500 persons residing in the neighborhood had no objection to, and in fact supported, the request of Big Top for the issuance of a 3.2% beer license. Counter petitions contained the signatures of some 125 persons also living in the neighborhood who were opposed to the issuance of this license. It was also agreed that in this particular neighborhood there was, as of the time of the hearing, one existing 3.2% beer license, the holder of which sold 3.2% beer by the package on premises which were located .2 mile to the West of Big Top's location.

At the hearing two persons who had circulated peti-

tions for Big Top appeared and testified as to the manner in which they had circulated the petitions. Also, three officers of Big Top appeared and testified in support of the application. Eight persons appeared and testified in opposition to the issuance of such a license. It was on this state of the record that the Board of County Commissioners denied Big Top's application, and found, in effect, that the needs of the neighborhood for 3.2% beer by the package were being met by the existing outlets, *i.e.*, the one outlet known as the Curve Market located .2 miles from the proposed outlet of Big Top.

■ Thus, the precise problem posed by this writ of error is whether the Board of County Commissioners acted arbitrarily and capriciously in its determination that the needs or requirements of the neighborhood for 3.2% beer by the package were being adequately met by the one existing outlet already located very near to Big Top's proposed outlet. In our view the Board did not act arbitrarily or capriciously in its determination in this regard and hence its action in denying Big Top's application must be upheld.

■ The present factual situation is a far cry from the one found in *McNeill v. The City Council of Cortez,* 148 Colo. 277, 365 P.2d 687. It is quite true that in the *McNeill* case we overturned the action of the City Council of Cortez in denying an application for a 3.2% beer license, but in that case the record disclosed that the nearest existing outlet to the proposed one was not .2 miles, but twenty-five miles! The proximity of the proposed outlet to the existing outlet is of course an important factor properly to be considered by the licensing authority. See *Board of County Commissioners v. Bova,* 153 Colo. 230, 385 P.2d 590; and *Jennings v. Hoskinson,* 152 Colo. 276, 382 P.2d 807.

Rather, we hold that the present controversy is governed by *Quedens v. J. S. Dillon Co.,* 146 Colo. 161, 360 P.2d 984. In that case we upheld the action of the trustees of the town of Commerce in denying the applica-

tion of Dillon for a license to sell 3.2% beer by the package. In so doing we made the following observation:

"Certainly the trustees of Commerce Town, answerable as the governing body thereof, coming face to face with its daily problems, are better able to weigh and consider the evidence presented by witnesses, petitions and remonstrances than is a county judge in a neighboring city; or this court, even further removed from the affairs of this self-governing community.

\* \* \*

"No doubt there are those who think that to meet the needs of a neighborhood and the desires of the inhabitants for exhilarating beverages, there must be an outlet on every single corner; others feel that a single outlet on the planet Mars would be sufficient. Between these two extremes there is a vast middle ground in which the licensing authority may in its sound discretion grant or deny a license without being properly or lawfully charged with arbitrary, capricious or unreasonable acts or conduct."

In our view the instant case is securely rooted in the "vast middle ground" where the licensing authority may in its sound discretion grant or deny the license without being properly or lawfully charged with arbitrary, capricious or unreasonable acts or conduct.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SCHAUER concur.